**LAW OFFICES OF**
**WAGNER & JONES LLP**
Nicholas J.P. Wagner #109455
Andrew B. Jones #076915
Daniel M. Kopfman #192191
Lawrence M. Artenian #103367
Paul C. Mullen #216447
1111 E. Herndon, Ste. 317
Fresno, CA 93720
559/449-1800
559/449-0749 Fax

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANELL ERICKSON, an individual, LYNDA TREMAIN, an individual, an individual, NAOMI GRIMM, an individual on behalf of themselves, and all persons similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>OLD REPUBLIC TITLE COMPANY, and DOES 1-50, inclusive,<br><br>    Defendants. | Case No.:**13-CV-1210 GPC (NLS)**<br><br>**CLASS ACTION**<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF STIPULATION AND AGREEMENT FOR SETTLEMENT OF CLASS AND COLLECTIVE ACTIONS<br><br>Date: June 28, 2013<br>Time: 1:30 p.m.<br>Dept: 2D |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF
STIPULATION AND AGREEMENT FOR SETTLEMENT OF
CLASS AND COLLECTIVE ACTIONS

3:12-CV-0120-GPC-NLS

# TABLE OF CONTENTS

Page

I.   INTRODUCTION.................................................................... 1

II.  PROPOSED CLASS AND
     COLLECTIVE ACTION DEFINITION...................................... 3

III. THE CLAIMS IN THE COMPLAINT AND
     PLAINTIFFS' INVESTIGATION............................................. 4

IV.  THE PARTIES' MEDIATION AND NEGOTIATION
     OF THE SETTLEMENT......................................................... 5

V.   THE TERMS OF THE SETTLEMENT
        Total Settlement Fund................................................ 6
        Net Settlement Fund................................................... 6
        No Claim Form........................................................... 6
        No Reversion to Defendants......................................... 6
        Allocation Formula..................................................... 6
        Workweek Resolution Process........................................ 6
        Release.................................................................... 7
        Effective Settlement Date............................................. 7

VI.  CLASS NOTICE................................................................ 7

        Nature of the Action................................................... 7
        Terms of the Settlement............................................... 7
        Calculation of Estimated Settlement Payment.................... 7
        Workweek Dispute Resolution Process.............................. 7
        Options to Object, Opt-Out, or Retain Separate Counsel....... 7
        Date of the Final Fairness Hearing.................................. 8
        Access to Settlement.................................................... 8
        Further Survey............................................................ 8

VII. THIS COURT SHOULD CONDITIONALLY CERTIFY
     THIS CASE FOR SETTLEMENT PURPOSES AS
     A CLASS AND COLLECTIVE ACTION.................................... 8

     A. Plaintiffs Satisfy the F.R.C.P. 23 Requirements.................. 8

        1.   Plaintiffs Meet the Requirements Under F.R.C.P. 23(a)..... 9
             a. Numerosity...................................................... 9
             b. Common Questions of Law or Fact.......................... 9
             c. Typicality....................................................... 10
             d. Adequacy of Representation................................. 10

        2.   Fed. R. Civ. P. 23(b) Requirements Are Satisfied.......... 11
             a. Predominance.................................................. 11
             b. Superiority..................................................... 12

B.  Plaintiffs Satisfy the Collective Action Certification Standard.................   13

VIII.   PROPOSED PAYMENT OF ATTORNEYS' FEES AND COSTS.........   13

IX.   PROPOSED ENHANCEMENT/INCENTIVE AWARDS ........................   16

X.   PLAINTIFFS SATISFY THE FACTORS FOR PRELIMINARY
APPROVAL OF THE  SETTLEMENT.............................................   17

    A.   The Settlement Is The Product Of Serious, Informed,
And Non-Collusive Negotiations.............................................   17

    B.   The Settlement Has No Deficiencies.........................................   18

    C.   The Settlement Does Not Improperly Grant Preferential
Treatment To Class Members...................................................   18

    D.   Estimate Of The Nature And Amount Of Potential Recovery............   19

XI.   THE CLASS NOTICE MEETS ALL REQUIREMENTS.............................   21

XII.   PROPOSED SCHEDULE FOR NOTICE, OBJECTIONS, OPT-OUTS......   21

XIII.   CONCLUSION.................................................................................   21

# TABLE OF AUTHORITIES

**<u>Cases</u>**                                                                                           **<u>Page</u>**

*Amchem Products, Inc. v. Windsor,*
    521 U.S. 591, 620 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Boeing Co v. Van Gernert,*
    444 U.S. 472, 480-81(1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Brinker Restaurant Corp v. Superior Court,*
    53 Cal.4th 1004, 1038 (Cal. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Brotherton v. Cleveland*
    141 F.Supp.2d 907, 913-914
    (S.D. Ohio 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Busk v. Integrity Staffing Solutions, Inc.,*
    713 F.3d 525, 530 (9th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Central Railroad & Banking Co. of Georgia v. Pettus,*
    113 U.S. 116 (1885) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Cicero v. Direct TV, Inc.,*
    Case No. 07-1182, 2010 WL 2991486 at * 5
    (C.D. Cal. July 27, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Dunk v. Ford Motor Co.,*
    (1996) 48 Cal.App.4th 1794, 1802 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Eisen v. Carlisle & Jacqueline*
    (1974) 417 U.S. 156, 164 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Gentry v. Superior Court*
    42 Cal.4th 443, 459 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Hanlon v. Chrysler Corp.*
    150 F.3d 1011, 1019 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 11

*In Re: Activision Securities Litigation,*
    723 F.Supp. 1373 (N.D. Cal. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re M.L. Stern Overtime Litigation,*
    Case No. 07-CV-0118,
    2009 WL 995864 at * 3
     (S.D. Cal. April 13, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 19

*Lealao v. Beneficial California, Inc.*
    82 Cal. App.4ᵗʰ 19, 28(Cal. App. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Leyva v. Medline Industries, Inc.,* ___F.3d.___,
    Case No. 11-56849, 2013 WL 2306567 at *1, 3
    (9ᵗʰ Cir. May 28, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Lovaglio v. W & E Hospitality, Inc.,*
    2012 WL 2775019 at *3 (S.D.N.Y. July 6, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Mitchell v. Acosta Sales, LLC*
    841 F.Supp.2d 1105, 1115 (C.D. Cal. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Powers v. Eichen,*
    229 F.3d 1249, 1256
    (9ᵗʰ Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Radcliffe v. Experian Information Solutions, Inc.,*
    ___F.3d___, 2013 WL 1715422 at *4
    (9ᵗʰ Cir. April 22, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*Sav-On Drug Stores, Inc. v. Superior Court*
    34 Cal.4ᵗʰ 319, 340 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Schultz v. QualxServ, LLC,*
    Case No. 09-CV-17,
    2012 WL 1439066 at *7-8
     (S.D. Cal. April 26, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Torrisi v. Tucson Elec. Power Co.,*
    8 F.3d 1370, 1376 (9ᵗʰ Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 18

*Van Vranken v. Atlantic Richfield Co.*
    901 F.Supp.294, 299 (N.D. Cal. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Vizcanino v. Microsoft Corp.,*
    290 F.3d 1043, 1048-1050
    (9ᵗʰ Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Williams v. Costco Wholesale Corp.*,
    Case No. 02cv2003, 2010 WL 761122 at \*5
    (S.D. Cal. March 4, 2010) ............................................. 17, 21

**Statutes**

California Business & Professions Code
    section 17200 ...................................................... 4


California Labor Code
    section 201 ........................................................ 4
    section 202 ........................................................ 4
    section 203 ........................................................ 4
    section 204 ........................................................ 4
    section 218 ........................................................ 4
    section 226 ........................................................ 4
    section 510 ........................................................ 4
    section 512 ........................................................ 4
    section 558 ........................................................ 4
    section 1174 ....................................................... 4
    section 1194 ..................................................... 4, 12
    section 1198 ....................................................... 4
    section 2751 ....................................................... 4
    section 2810 ....................................................... 4

Fair Labor Standards Act
    29 U.S.C. §201 ................................................... 13

Federal Rules of Civil Procedure, Rule 23 ...................... 8, 10, 11, 12, 13, 21

Newberg on Class Actions; Fourth Edition ........................................ 9

1 | **LAW OFFICES OF**
**WAGNER & JONES LLP**
2 | Nicholas J.P. Wagner #109455
Andrew B. Jones #076915
3 | Daniel M. Kopfman #192191
Lawrence M. Artenian #103367
4 | Paul C. Mullen #216447
1111 E. Herndon, Ste. 317
5 | Fresno, CA 93720
559/449-1800
6 | 559/449-0749 Fax

7

Attorneys for Plaintiffs

8

9

UNITED STATES DISTRICT COURT

10

11 | SOUTHERN DISTRICT OF CALIFORNIA

12

JANELL ERICKSON, an individual, ) Case No.:13-CV-1210 GPC (NLS)
13 | LYNDA TREMAIN, an individual, an )
individual, NAOMI GRIMM, an ) **CLASS ACTION**
14 | individual on behalf of themselves, and )
all persons similarly situated, ) MEMORANDUM OF POINTS AND
15 | ) AUTHORITIES IN SUPPORT OF
) PLAINTIFFS' MOTION FOR
16 | Plaintiffs, ) PRELIMINARY APPROVAL OF
) STIPULATION AND AGREEMENT FOR
17 | v. ) SETTLEMENT OF CLASS AND
) COLLECTIVE ACTIONS
18 | OLD REPUBLIC TITLE COMPANY, and )
DOES 1-50, inclusive, )
19 | )
Defendants. )

20

21 | **I.   INTRODUCTION**

22

On May 21, 2013, Plaintiffs Janell Erickson, Lynda Tremain and Naomi Grimm

23 | ("*Grimm*") filed a complaint that alleges an array of federal and state wage and hour claims

24 | against defendants Old Republic Title Company (including the merged Frontier Title

25 | Company) and affiliates North State Title Company and Mara Escrow Company

26 | (collectively, "Defendants") on behalf of a proposed class of Defendants' present and

27 | former California escrow employees.  A prior action had been filed generally on the same

28 | grounds (with the exception that no federal claims had been asserted) entitled *Patricia*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF
STIPULATION AND AGREEMENT FOR SETTLEMENT OF
CLASS AND COLLECTIVE ACTIONS

3:12-CV-0120-GPC-NLS

1

*Hinrichs and Shawna Pace v. Old Republic Title Company et al.*, Case No. 30-2011-00439102 in the Superior Court of California, for the County of Orange. ("*Hinrichs*"). Plaintiffs Janell Erickson, Lynda Tremain, Naomi Grimm, Patricia Hinrichs and Shawna Pace are collectively referred to as "Plaintiffs." Plaintiffs and Defendants are referred to as the "Parties."

After an extensive multi-year investigation by Plaintiffs' Counsel including numerous interviews and review of documents involving substantial information concerning the entire proposed class produced by Defendants, and a 13-hour mediation followed by months of further arm's length negotiations, the Parties entered into a Stipulation and Agreement for Settlement of Class and Collective Actions and First Amendment to Stipulation and Agreement for Settlement of Class and Collective Actions (collectively, referred to as the "Settlement"). *See* Declaration of Nicholas Wagner in Support of Motion for Preliminary Approval of Settlement ("Wagner Dec."), Exhibits A and B thereto. In summary, the proposed Settlement provides for the certification of a class and collective action for settlement purposes only of all Defendants' present and former California escrow employees from January 7, 2007 to the date of this Court's preliminary approval order, which consists of approximately 1,100 individuals. The substantial payment of $12,000,000.00 (inclusive of all employer and employee taxes, costs of administration, Plaintiffs' Counsel's requested attorneys' fees and expenses, and Plaintiffs' service or enhancement awards) to the proposed settlement class is in consideration for the release of all wage and hour claims. The allocation of the net settlement benefits is based on an objective formula involving each participating settlement class members' pro rata number of workweeks and average hourly rate of pay without the need to file a claim form and without any reversion to Defendants of unclaimed funds.

Plaintiffs seek entry of an order attached as Exhibit 4 to the Settlement: (1) preliminarily approving the proposed Settlement; (2) preliminarily certifying the proposed class for settlement purposes; (3) conditionally certifying the collective action; (4) approving the form and method of providing class-wide notice; (5) appointing the Law Offices of Wagner & Jones, LLP as counsel for the settlement class and collective action; and (6) scheduling a final fairness hearing. At the final fairness hearing, the Court will be requested to: (i) certify for

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF
STIPULATION AND AGREEMENT FOR SETTLEMENT OF
CLASS AND COLLECTIVE ACTIONS

3:12-CV-0120-GPC-NLS

2

settlement purposes only of the proposed Settlement Class and collective action; (ii) approve the form and method used to provide notice to the Settlement Class; (iii) approve the proposed Settlement; (iv) enter the Final Judgment and Order of Dismissal; and (v) approve Plaintiffs' Counsel's application for attorneys' fees and costs, and incentive or enhancement awards for the named Plaintiffs.

## II.   PROPOSED CLASS AND COLLECTIVE ACTION DEFINITION

Plaintiffs in the *Grimm* Action seek this Court to certify the following settlement and collective class (Settlement, at p. 6, II(H)):[1]

The Settlement Class consists of all persons who were employed by Old Republic Title Company, North State Title Company, Frontier Title Company, and Mara Escrow Company in the State of California during the Class Period in one or more Class Jobs who did not enter into a release of any of the Released Parties that included the subject matter of Released Claims (Participating Settlement Class Members).[2]

---

[1]   Recently, the Ninth Circuit approved this hybrid action. *See Busk v. Integrity Staffing Solutions, Inc.*, 713 F.3d 525, 530 (9th Cir. 2013) ("In sum we agree with the other circuits to consider the issue that the fact that Rule 23 class actions use an opt-out mechanism while FLSA collective actions use an opt-in mechanism does not create a conflict warranting dismissal of the state law claims.").

[2]   The above capitalized terms have the following meaning in the Settlement:

"Class Jobs" mean the job positions of Assistant Branch Manager, Senior Escrow Officer, Escrow Officer, Juniors Escrow Officer, Assistant Escrow Officer, Escrow Assistant, and any and all similar positions that existed during the Class Period. Settlement at p. 5,II(F).

"Class Period" means from January 7, 2007 through and including the Preliminary Approval Date. Settlement at p.6, II (I).

"Preliminary Approval Date" means the date on which the Federal Court executes, files and enters the Order of Preliminary Approval. Settlement at p. 13, II(LL).

"Participating Settlement Class Members" means Participating Settlement Class Member (Escrow Officer) and Participating Settlement Class Member (Escrow Assistant). Settlement at p. 11, II(DD).

"Participating Settlement Class Member (Escrow Officer) means any Class Member who has the Class Job of assistant branch manager, senior escrow officer, escrow officer, junior officer, assistant escrow officer or similar other titles at any time during the Class Period and who does not timely and effectively opt out of the Settlement or who if in bankruptcy at the time of the Preliminary Approval Date obtains by the Final Fairness Hearing a Bankruptcy Court

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF STIPULATION AND AGREEMENT FOR SETTLEMENT OF CLASS AND COLLECTIVE ACTIONS

3:12-CV-0120-GPC-NLS

3

For purposes of the collective action, the same definition applies except that only those individuals who negotiate their Individual Settlement Payment will be deemed to have opted-in for purposes of giving a release of their claims under the Fair Labor Standards Act as part of the Released Claims (Participating Settlement Class Members). [3]

### III.   THE   CLAIMS   IN   THE   COMPLAINT   AND   PLAINTIFFS' INVESTIGATION

Plaintiffs have alleged violations of Fair Labor Standards Act (FLSA) under 29 U.S.C. §201 et seq. including §§216(b) and 255(a), violations of California Labor Code including §§201, 202, 203, 204, 218, 218.5, 218.6, 226, 226.3, 226.7, 510, 512, 558, 1174, 1174.5, 1194, 1198, 2751, and 2810.5, all applicable wage orders, California Business & Professions Code Section 17200, et seq., and various California Civil Code sections.

Plaintiffs were escrow officers or escrow assistants employed by Defendants in California during the Class Period. Because Plaintiffs and the proposed Settlement Class were all treated as non-exempt during the Class Period, they were entitled to overtime under federal and state laws at one and one-half times their regular rate of pay. Plaintiffs allege that Defendants had uniform policies and practices not to pay all such overtime. Moreover, Plaintiffs allege that while Defendants purported to afford meal period breaks, they either discouraged Plaintiffs and Settlement Class Members from taking such mandated breaks or knew or reasonably should have known the Settlement Class Members did not take such breaks but did

---

Approval Order. Settlement at p. 11, II(BB).

"Participating Settlement Class Member (Escrow Assistant ) means any Class Member who has the Class Job of escrow assistant at any time during the Class Period and who does not timely and effectively opt out of the Settlement or who if in bankruptcy at the time of the Preliminary Approval Date obtains by the Final Fairness Hearing a Bankruptcy Court Approval Order. Settlement at p. 12, II(CC).

[3] "Individual Settlement Payment" means the net amount to be paid to each Participating Settlement Class Member in the form of a check after deduction or withholding of all appropriate state and federal employee and employer taxes." Settlement at p. 9, II(R). *See Lovaglio v. W & E Hospitality, Inc.*, 2012 WL 2775019 at *3 (S.D.N.Y. July 6, 2012) ("All Class members who endorse the settlement checks shall forever and fully release Defendants from all FLSA claims asserted in this lawsuit through December 31,2010, including all FLSA claims for unpaid wages, liquidated damages and attorneys' fees and costs related to such claims.").

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF
STIPULATION AND AGREEMENT FOR SETTLEMENT OF
CLASS AND COLLECTIVE ACTIONS

3:12-CV-0120-GPC-NLS

4

not compensate such employees during these breaks when they worked.   Plaintiffs further contend Defendants have failed to comply with an array of record-keeping requirements including providing proper paystubs and other agreements reflecting the accurate terms and conditions of employment. The Complaint seeks compensatory and punitive damages, restitution, injunctive and declaratory relief, statutory penalties, attorneys' fees, costs and interest.

Plaintiffs through their counsel have interviewed numerous former and present employees about the about alleged violations, requested and obtained from Defendants substantial information that reflects for each member of  the proposed Settlement Class the number of workweeks, the amount of compensation (including salary and commissions), and the amount of overtime paid. Wagner Dec. at p.8:20-p.9:2. Moreover, as described below, as part of the mediation, the parties conducted a survey under the auspices of a neutral party of the proposed Settlement Class and inquired about the above claims. *Id.* at p. 9:9-13. Based upon the interviews and information provided by Defendants and the results of the survey, Plaintiffs have been able to properly investigate their claims and in light of the controlling law make realistic assessments about the strength and weaknesses of their claims. *Id.* at p. 8:23-9:13.

## IV.   THE PARTIES' MEDIATION AND NEGOTIATION OF THE SETTLEMENT

On September 26, 2012, the Parties participated in mediation with Michael Dickstein, a highly-regarded mediator for complex actions. *Id.* at p. 9:4-13. The mediation sessions involved intense negotiations, including an all-day (13-hour) mediation session in San Francisco California, along with numerous lengthy follow-up telephone conversations with Mr. Dickstein and the Parties.  After these multiple sessions with aggressive give-and-take negotiations, the Parties reached an Agreement as set forth in the Settlement.  *Ibid.*  As part of the mediation, Gilardi & Co. LLC ("Gilardi") conducted a survey of randomly selected 200 members of the proposed Settlement Class about the extent that Defendants allegedly had violated wage and hour laws that are the subject of Plaintiffs' claims. *Ibid.*  These survey results better informed the Parties in negotiating a fair resolution of this lawsuit.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF
STIPULATION AND AGREEMENT FOR SETTLEMENT OF
CLASS AND COLLECTIVE ACTIONS

3:12-CV-0120-GPC-NLS

5

## V.   THE TERMS OF THE SETTLEMENT

The Settlement has the following salient terms:

**Total Settlement Fund.**   Defendants are paying $12,000,000.00 inclusive of all employee's taxes, employer's taxes (up to $400,000), Plaintiffs' Counsel's Attorneys' Fees not to exceed $3,000,000, Plaintiffs' Counsel's actual out of pocket expenses not to exceed $50,000, enhancement or incentive awards to Plaintiffs in the total amount of $110,000 for the five (5) named Plaintiffs in the *Hinrichs* and *Grimm* Actions[4], and Settlement Class Administrator Costs[5], which are estimated not to exceed $30,000. Settlement at p. 20, II(XX)(Total Settlement Fund) and p. 9; II(T)(Net Settlement Fund); p. 12,II(II)(Plaintiffs Counsel's Attorneys' Fees); p. 13 II(JJ) (Plaintiffs' Counsel's Expenses); p. 9, II(N)(Enhancements); and p. 19, II(UU)(Settlement Class Administrator Costs).

**Net Settlement Fund.**  The Net Settlement Fund, which is $12,000,000 less all of the above expenses, will be distributed to the Settlement Class Members, as defined above, and after deducting all employer and employee taxes. If the Court makes the awards to Plaintiffs' Counsel and Plaintiffs as set forth above and the Settlement Class Administrator's Costs and Plaintiffs' Counsel's Expenses do not each exceed $30,000, then the Net Settlement Fund will exceed $8,830,000 (before deduction of employer and employee taxes). Settlement, p. 24, III(B)(2).

**No Claim Form.**   To receive their allocable share of the Net Settlement Fund, the Participating Settlement Class Members do not have to file a claim form.

**No Reversion to Defendants.** Any unclaimed amounts will not revert to Defendants. Rather, any unclaimed settlement payments will be sent to the California State Comptroller, Unclaimed Property Fund. Settlement, p. 22, III(B)(1).

**Allocation Formula.** The Net Settlement Fund will be allocated based upon each individual Participating Settlement Class Member's *pro rata* share of the fund based on the objective calculation involving the number of workweeks and average rate of pay. Settlement, p. 22-25, III(B)(2).

**Workweek Resolution Process.**  As described below, each Settlement Class Notice sets forth the number of workweeks that the recipient of the notice worked as reflected in

---

[4]  As to the proposed enhancement awards, plaintiffs Hinrichs and Pace are each to receive $25,000, and Plaintiffs Erickson, Tremain, and Grimm are each to receive $20,000.
[5]   Gilardi is the Settlement Class Administrator. Settlement, p. 17, II(TT).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF
STIPULATION AND AGREEMENT FOR SETTLEMENT OF
CLASS AND COLLECTIVE ACTIONS                                    3:12-CV-0120-GPC-NLS

6

Defendants' records.   The Settlement Class Member can dispute that amount by providing verifiable records in the form of paystubs. The Settlement Class Administrator, will determine if the objection is valid, and if so, the number of workweeks will be adjusted.  Settlement, pp. 35-37, V(F).

**Release.** The Participating Settlement Class Members release Plaintiffs from all federal and state wage and hour claims. As noted above, to the extent a Participating Settlement Class Member does not negotiate the Individual Settlement Payment, then she will not be deemed to have opted-into the collective action and her FLSA claims will not be released. Settlement, pp. 14-15,II(PP);pp.42-46,VI(A)-(E).

**Effective Settlement Date.**   Generally, the Settlement will become effective and distributions will be made following the Court's approval of the Settlement and no appeals are filed other than limited to the issues of Plaintiffs Attorneys' Fees or Expenses or Plaintiffs' Enhancement Awards, or after the exhaustion of all appeals and assuming the terms of the Settlement are affirmed in all respects. Settlement, p. 8, II(M); p.12, II(FF).

## VI.   CLASS NOTICE

The proposed Class Notice (Settlement, Ex. 1 thereto) contains the following principal terms:

**Nature of the Action.** The Notice describes Plaintiffs' Claims and Defendants' general defenses to those claims.

**Terms of the Settlement.**  In a clear question and answer format the Class Notice summarizes all principal terms of the Settlement including the amount of the payment, proposed attorneys' fees and expenses and the terms of the release.

**Calculation of Estimated Settlement Payment.** The Class Notice sets forth the number of workweeks for each Settlement Class Member and allows each Settlement Class Member to easily calculate the estimated amount that he or she will receive.

**Workweek Dispute Resolution Process.** The Class Notice sets forth the specific process for the Settlement Class Member to dispute the number of workweeks reflected in Defendants' records.

**Options to Object, Opt-Out, or Retain Separate Counsel.** The Notice sets forth the options and respective deadlines that each Settlement Class Member has to do (i) nothing, (ii)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF
STIPULATION AND AGREEMENT FOR SETTLEMENT OF
CLASS AND COLLECTIVE ACTIONS

3:12-CV-0120-GPC-NLS

7

object, or (iii) request to exclude themselves, and the consequences of each action. The Notice further sets forth the right of each Settlement Class Member to appear at the Final Fairness Hearing through her counsel at the Settlement Class Member's expense. The deadlines for requests for exclusion and objections are forty-five (45) days from the date of mailing of the Settlement Class Notices.

**Date of the Final Fairness Hearing**. The Class Notice specifies the date, location, and subject matter of the Final Fairness Hearing.

**Access to Settlement**. The Class Notice sets forth a website where the Settlement Class Member can access the Settlement.

**Further Survey**. As part of the Notice, each Settlement Class Member will be sent a questionnaire asking information concerning the claims in the lawsuit to which the Settlement Class Member is free to respond or not.

All Class Notices will be sent by first class mail. Defendants will provide the last known addresses of each Settlement Class Member to the Settlement Class Administrator. Before sending the Class Notice, the Settlement Class Administrator will update the addresses through the National Change of Address System. If any Notice is returned with a forwarding address, the Settlement Class Administrator will send the notice to that new address. If no forwarding address is provided, then the Settlement Class Administrator will promptly conduct a "standard search" sometimes called "skip traces" search to locate a better address. If a better address is found, the Settlement Class Administrator will promptly re-send the Notice Packet by first-class mail.

## VII. THIS COURT SHOULD CONDITIONALLY CERTIFY THIS CASE FOR SETTLEMENT PURPOSES AS A CLASS AND COLLECTIVE ACTION

Plaintiffs contend that the proposed Settlement Class meets all of the requirements for class certification under F.R.C.P. Rule 23, and as a collective action under 29 U.S.C. § 216(b).

### A. Plaintiffs Satisfy the F.R.C.P. 23 Requirements

In the context of settlement, Plaintiffs must satisfy the requirements for certification of a class, except the standard of "manageability" that is part of the predominance analysis under F.R.C.P. 23(b)(3). *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Moreover, the Court should consider the terms of the settlement

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF
STIPULATION AND AGREEMENT FOR SETTLEMENT OF
CLASS AND COLLECTIVE ACTIONS

3:12-CV-0120-GPC-NLS

8

itself, particularly in connection with issues as adequacy of representation to assure there is the absence of any conflicts. *Id.*, 521 U.S. at 627.[6]

1.    Plaintiffs Meet the Requirements Under F.R.C.P. 23(a)

a.       Numerosity

F.R.C.P. §23(a)(1) only requires that the class be "so numerous that joinder of all members is impracticable. In the present case there are over 1100 class members who work or worked for Defendants throughout California. When the class numbers in the hundreds, this fact, in itself, satisfies the Rule 23(a)(1) prerequisites. *In re M.L. Stern Overtime Litigation*, Case No. 07-CV-0118, 2009 WL 995864 at * 3 (S.D. Cal. April 13, 2009) (300 employees satisfy numerosity); *see also*, Newberg on Class Actions; Fourth Edition, §3:5.

b. Common Questions of Law or Fact

The commonality requirement is met if "there are questions of law or fact common to the class." F.R.C.P. §23(a)(2). The commonality requirement is construed "permissively." "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.* 150 F.3d 1011, 1019 (9th Cir. 1998). "Rule 23(a)(2) does not require that all questions of law or fact raised in the litigation be common. The test or standard for meeting the Rule 23(a)(2) prerequisite is qualitative rather than quantitative; that is, there  need be only a single issue common to all members of the class. Therefore, this requirement is easily met in most cases." Newberg on Class Actions; Fourth Edition, §3:10.

In this litigation, each Settlement Class Member shares the same legal issues: (1) whether Defendants are liable for failure to pay overtime wages for each overtime hour worked; (2) whether Defendants are liable for failure to provide off-duty meal breaks and rest periods; and

---

[6] Solely for purposes of settlement, Defendants are not opposing certification of the class. See Settlement, pp. 31-32, ¶IV.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF
STIPULATION AND AGREEMENT FOR SETTLEMENT OF
CLASS AND COLLECTIVE ACTIONS

3:12-CV-0120-GPC-NLS

9

1  (3) whether Defendants' failure to pay overtime wages and provide meal and rest breaks

2  constitutes an unfair or unlawful business practice in violation of Cal. Bus. Prof. Code §17200 et

3  seq.   Wagner Dec. at p. 13:10-17. Thus, the proposed Settlement Class shares sufficient

4  commonality to satisfy the minimal requirements of Rule 23(a)(2).

5

6  ### c. Typicality

7  Typicality requires that "the claims or defenses of the representative parties be typical of

8  the claims or defenses of the class." F.R.C.P. 23(a)(3). The representative claims are "typical" if

9  they are "reasonably co-extensive with those of absent class members," though they "need not be

10  substantially identical." *Hanlon*, 150 F.3d at 1020.

11  In this lawsuit, the named Plaintiffs worked for one of Defendants in California as escrow

12  officers or their assistants. Plaintiffs all make focused claims for unpaid overtime wages, missed

13  meal and rest periods, and other related wage and hour claims. Accordingly, Plaintiffs' claims

14  are sufficiently typical to meet the requirement of Rule 23(a)(3).

15

16  ### d. Adequacy of Representation

17  Finally, Rule 23(a)(4) requires that the representative parties be able to "fairly and

18  adequately protect the interests of the class." Determining whether representation is adequate

19  involves two inquiries: "(1) do the named plaintiffs and their counsel have any conflicts of

20  interest with other class members and (2) will the named plaintiffs and their counsel prosecute

21  the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

22  First, in analyzing the lack of a conflict of interest the Court should look to the Settlement

23  itself to determine if any conflicts are manifested by the allocation of settlement benefits. *See*

24  *Amchem*, 521 U.S. at 627. Here, because the Settlement provides for the allocation of benefits

25  based on previously acceptable objective factors involving the number of workweeks and

26  average rate of pay, there are no conflicts of interest. *See, e.g., See Cicero v. Direct TV, Inc.*,

27  Case No. 07-1182, 2010 WL 2991486 at * 5 (C.D. Cal. July 27, 2010(in a wage and hour

28  settlement, the court held, "Additionally, the fund will be distributed based on the number of

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF
STIPULATION AND AGREEMENT FOR SETTLEMENT OF
CLASS AND COLLECTIVE ACTIONS                                    3:12-CV-0120-GPC-NLS

10

weeks worked by each class member, which appears to be a fair method of distributing the fund.").

Second, Plaintiffs have retained competent counsel who has extensive experience in wage and hour class action litigation in California and have vigorously prosecuted this action. Wagner Dec. at p. 2:9-5:11.

## 2.    Fed. R. Civ. P. 23(b) Requirements Are Satisfied

Once the Rule 23(a) requirements are satisfied, the Court looks to Rule 23(b) to determine whether a class should be maintained.   In the instant case, the Parties propose certification for settlement purposes pursuant to Rule 23(b)(3). In order to qualify under Rule 23(b)(3), two conditions must be satisfied: (1) the questions of law and fact common to the class must predominate over questions affecting only individual members; and (2) a class action must be superior to other available methods for fairly and efficiently adjudicating the controversy.

### a. Predominance

The predominance inquiry tests "whether proposed classes are sufficiently cohesive to warrant adjudication by representation. *Hanlon* 150 F.3d at 1022. Here, Plaintiffs contend that the adjudication of the common issues surrounding Defendants' uniform policies not to pay overtime, discourage meal period, issue improper paystubs and related record keeping claims would establish liability on a class-wide basis. Wagner Dec., p. 14:23-24:1.   *See, e.g., Schultz v. QualxServ, LLC*, Case No. 09-CV-17, 2012 WL 1439066 at *7-8 (S.D. Cal. April 26, 2012) (in certifying the class of wage and hour claims, as to overtime claims the court observed "Plaintiffs challenge the uniform policy not to compensate service technicians for the specified activities"; as to meal breaks, "Plaintiffs challenge Defendants' common corporate policy of failing to relieve the technicians of all work during the rest and meal periods"; and as to paystubs, "[t]his claim is related to other alleged substantive violations in that Plaintiffs contend the employees cannot calculate the amount apportioned for expenses and overtime."); *Leyva v. Medline Industries, Inc.*, ___F.3d.___, Case No. 11-56849, 2013 WL 2306567 at *1, 3 (9th Cir.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF
STIPULATION AND AGREEMENT FOR SETTLEMENT OF
CLASS AND COLLECTIVE ACTIONS

3:12-CV-0120-GPC-NLS

11

May 28, 2013) (reversed district court's refusal to certify wage and hour class that included improper wage statement claims).

### b. Superiority

"Rule 23(b)(3) also requires that class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy." This factor "encompasses the whole range of practical problems that may render the class format inappropriate for a particular suit." *Eisen v. Carlisle & Jacqueline* (1974) 417 U.S. 156, 164.  In applying the non-exclusive factors in 23(b)(3), the Ninth Circuit held:

> From either a judicial or litigant viewpoint, there is no advantage
> in individual members controlling the prosecution of separate
> actions.  There would be less litigation or settlement leverage,
> significantly reduced resources and no greater prospect for recovery.
> With a few exceptions, the pre-existing lawsuits were cooperatively
> managed into the instant action.  No particular forum stands out
> as a logical venue for concentration of claims. Thus, consideration
> of the factors  enumerated in Rule 23(b)(3) does not alter the conclusion.

*Hanlon*, 150 F.3d at 1023. California Labor Code 1194 confirms a clear public policy "specifically directed to the enforcement of California's minimum wage and overtime laws for the benefit of workers." *Sav-On Drug Stores, Inc. v. Superior Court* 34 Cal.4th 319, 340 (2004); *see also Leyva*, ___F.3d. at ___,  2013 WL 2306567 at *4. The application of the standards in *Hanlon* and *Leyva* compare favorably to the facts of the instant case. and echoes the California Supreme Court's recognition of the superiority of class actions to vindicate wage and hour claims, "Given [the] risks and economic realities, class actions play an important function in enforcing overtime laws by permitting employees who are subject to the same unlawful payment practices a relatively inexpensive way to resolve their disputes." *Gentry v. Superior Court*  42 Cal.4th 443, 459 (2007).

Accordingly, since the requirements of F.R.C.P. 23(a) and 23(b)(3) are satisfied, the

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF
STIPULATION AND AGREEMENT FOR SETTLEMENT OF
CLASS AND COLLECTIVE ACTIONS

3:12-CV-0120-GPC-NLS

12

Court should certify this case for settlement purposes as a class action.

B. Plaintiffs Satisfy the Collective Action Certification Standard

The factual showing for conditional certification of an FLSA collective action under 29 U.S.C. § 216(b)[7] is "'modest.'" *Mitchell,* 841 F. Supp.2d at 1115 (cit. omitted). Because as noted above the more stringent requirements for F.R.C.P. 23 have been satisfied, then the requirements for FLSA collective action necessarily are met.

VIII. **PROPOSED PAYMENT OF ATTORNEYS' FEES AND COSTS**

Plaintiffs' Counsel will ask the Court to approve payment of attorneys' fee award in the amount of the Ninth Circuit benchmark of 25 percent of the Settlement Amount, or $3,000,000.00. Settlement at p. 12, II(II).

Due to the creation of a settlement amount of $12,000.000.00 that is available to pay Class Members' attorney's fees and costs of suit, claim administration fees, and enhancements to Plaintiffs, Plaintiffs' Counsel respectfully request that the Court preliminarily approve the payment to Plaintiffs' Counsel of 25 percent of the settlement amount as reasonable attorney's fees. Plaintiffs' Counsel believe that this amount will fairly and reasonably compensate them for their successful vindication of Class members' rights, taking into account the quality, nature and extent of counsel's efforts, the excellent results achieved, and the fact that the amount of fees for which Plaintiffs' Counsel seeks approval is less than the contingency fee agreements plaintiffs and their attorneys typically make. Moreover, Plaintiffs' Counsel has invested significant amounts of time working on this case and will continued to do so, and has personally financed the case at substantial risk to themselves.

In *Central Railroad & Banking Co. of Georgia* v. *Pettus*, 113 U.S. 116 (1885), the United States Supreme Court stated that the lawyer who creates the common fund is allowed an extra share beyond what was arranged with the client. In *Boeing Co v. Van Gernert*, 444 U.S. 472,

---

[7] 29 U.S.C. § 216(b) provides, in part an action "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves other employees similarly situated." Neither the statute nor the Ninth Circuit has defined "similarly situated." *Mitchell v. Acosta Sales, LLC*, 841 F. Supp.2d 1105, 1115 (C.D. Cal. 2011).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF
STIPULATION AND AGREEMENT FOR SETTLEMENT OF
CLASS AND COLLECTIVE ACTIONS

3:12-CV-0120-GPC-NLS

13

480-81(1980), the United States Supreme Court concluded that the attorneys for a successful class may recover a fee based on the entire common fund created for the class, even if some class members make no claims against the fund so that money remains in it that otherwise would be returned to the defendants.

Under the "common fund" doctrine, "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing*, 444 U.S. at 478. The Ninth Circuit has established a "benchmark" award of 25 percent of the common fund. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993). The Ninth Circuit has identified five factors to consider in determining whether an award of attorneys' fees is reasonable: (1) the results achieved; (2) the risks of litigation; (3) the benefits of the settlement; (4) the awards in similar cases; and (5) contingent nature of the fee. See *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-1050(9th Cir 2002) [upholding a 28% fee award].)

In *In Re: Activision Securities Litigation*, 723 F.Supp. 1373 (N.D. Cal. 1989, the Court held that the preferred and accepted practice for determining the attorney fee award in class action litigation was to base the fee on a percentage of the recovery instead of using a lodestar method. The Court stated and held:

> Reviewing this history of fee awards in class action, litigation, the court is compelled to conclude that the accepted practice of applying the lodestar or Kerr-Johnson regime to common fund cases does not achieve the stated purpose of proportionality, predictability and protection of the class. It encourages abuses such as unjustified work and protracting the litigation. It adds to the work load of already overworked district courts. In short, it does not encourage efficiency, but rather it adds inefficiency to the process.

> Therefore, this court concludes that in class action common fund cases the better practice is to set a percentage fee and that, absent extraordinary circumstances that suggest reasons to lower or increase the percentage, the rate should be set at 30%. This will encourage plaintiffs' attorneys to move for early settlement, provide predictability for the attorneys and the class members, and reduce the time consumed by counsel and court in dealing with voluminous fee petitions.

*Id.*, at 1378-1379.

The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33% of the total settlement value, with 25% considered the benchmark. *Powers v. Eichen*, 229 F.3d 1249,

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF
STIPULATION AND AGREEMENT FOR SETTLEMENT OF
CLASS AND COLLECTIVE ACTIONS

3:12-CV-0120-GPC-NLS

14

1256 (9th Cir. 2000).  The Third Circuit Task Force noted the preferred use of the common fund methodology for awarding fees:

> [I]n 1985, concerned about increasing criticism of the lodestar method, the Third Circuit reexamined the concept it is credited with inventing in *Lindy I., supra*, 487 F.2d 161, and concluded it was seriously deficient and subject to abuse when applied in cases resulting in the creation of a fund. A task force commissioned by the Third Circuit concluded that the lodestar approach (1) "increases the workload of an already overtaxed judicial system," (2) is "insufficiently objective and produce(s) results that are far from homogenous," (3) "creates a sense of mathematical precision that is unwarranted in terms of the realities of the practice of law," (4) "is subject to manipulation by judges to prefer to calibrate fees in terms of the percentages of the settlement fund or the amounts recovered by the plaintiffs or of an overall dollar amount," (5) "encourages lawyers to expend excessive hours, and ... engage in duplicative and unjustified work," (6) "creates a disincentive for the early settlement of cases," (7) deprives trial courts of "flexibility to reward or deter lawyers so that desirable objectives, such as early settlement, will be fostered," (8) "works to the particular disadvantage of the particular disadvantage of the public interest bar," and (9) results in confusion and lack of predictability. (Report of the Third Circuit Task Force, Court Awarded Attorney Fees (1985) 108 F.R.D. 237, 246-249, (Report of the Third Circuit Task Force).) Due to these perceived deficiencies, the Report of the Third Circuit Task Force concluded that the lodestar technique is a "cumbersome, enervating, and often surrealistic process of preparing and evaluating fee petitions that now plagues the Bench and Bar". *(Id.* at p. 258), and recommended a return to the percentage of the recovery fee formula in cases involving a settlement fund.

*Lealao v. Beneficial California, Inc.* 82 Cal. App.4[th] 19, 28(Cal. App. 2000).

Plaintiffs' Counsel submits that it should be rewarded not only for the tremendous risk taken in prosecuting this case but also for the significant results achieved for the Class Members. The Settlement achieved by Plaintiffs' Counsel did not result in a nominal or insignificant recovery for individual Class Members, as often occurs in class action settlements. The settlement, after deduction of all fees, costs and enhancements (but before deduction of employer and employee taxes), will result in an estimated average recovery of approximately $7,759 per Class Member.

The Settlement Agreement provides that each Class Member will receive payment unless he or she opts out of the Settlement. Plaintiffs' Counsel negotiated terms of the settlement so that Class members do not have to file claims to recover. Therefore, Plaintiffs' Counsel submits that based upon the case law set forth above, all of which note the logic,

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF
STIPULATION AND AGREEMENT FOR SETTLEMENT OF
CLASS AND COLLECTIVE ACTIONS

3:12-CV-0120-GPC-NLS

15

fairness, and benefit of basing an attorneys' fees award in a class action litigation on a percentage of the recovery, and based upon the significant risk that Plaintiffs' Counsel undertook in prosecuting this case and the significant recovery made for each Class Member, the Court should preliminarily approve the Plaintiffs' Counsel's request for a fee and expense award in the amount of 25 percent of the settlement amount of $12,000,000.00.

## IX. PROPOSED ENHANCEMENT/INCENTIVE AWARDS

Plaintiffs will request enhancement fees in the amount of $20,000.00 each for Naomi Grimm, Janell Erickson, and Lynda Tremain, and $25,000.00 each for Shawna Pace and Patricia (Pattie) Hinrichs.

Plaintiffs believe these service enhancements of $20,000.00 for Naomi Grimm, Janell Erickson, and Lynda Tremain and $25,000.00 for Shawna Pace and Patti Hinrichs are justified, extremely fair and warranted. Defendants do not oppose these amounts. The 5 class representatives waived their right to pursue an individual action in their own lawsuit or a labor commissioner action and Plaintiffs contend could have received a speedy and probably a greater individual recovery. Plaintiffs invested effort and time in this action and most significantly placed their interests of the Settlement Class Members ahead of their own in pursuit of a Class-wide recovery. Plaintiffs have accepted the risk of protracted class action litigation and, in order to facilitate the Settlement, agreed to sign general releases only of all claims. The Settlement requires Settlement Class Members to release those claims asserted in the Complaint or that arise from or are related to the facts alleged in the Complaint. Thus, the releases given by Settlement Class Members are more narrowly drafted than those given by named Plaintiffs.

The service awards (that is, the Enhancements) requested by Plaintiffs are reasonable. "The criteria courts may consider in determining whether to make an incentive award include: (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation and (5) the personal benefit (or lack thereof) enjoyed by the class result of the litigation." *Van Vranken v. Atlantic Richfield Co.* 901 F.Supp.294, 299 (N.D. Cal. 1995).

In the instant action, each Plaintiff/Class Representatives seeks a service award for her efforts in prosecuting this case, retaining competent counsel, participating informal discovery

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF STIPULATION AND AGREEMENT FOR SETTLEMENT OF CLASS AND COLLECTIVE ACTIONS

3:12-CV-0120-GPC-NLS

16

process and investigation, attending mediation, and accepting the risks associated with protracted class action litigation.   They also have taken the risk of being black-balled in this tight escrow/title industry.

Each provided invaluable information and documents to their attorneys, and assisted Plaintiffs' Counsel in the mediation and negotiations.   Plaintiffs/Class Representatives participated in all aspects of this case, and agreed to sign a General Release as part of the Settlement.   Wagner Dec. at p. 5:19-26); *see also*, Declarations of Named Plaintiffs Jannell Erickson, Lynda Tremain, Naomi Grimm, Patricia Hinrichs, and Shawna Pace in Support of Motion for Preliminary Approval of Settlement.

The service awards sought by Plaintiffs are well within the acceptable range awarded in similar cases.   *See Brotherton v. Cleveland* 141 F.Supp.2d 907, 913-914 (S.D. Ohio 2001) (approving an award of $50,000, where the class representative "has been instrumental in bringing [the] lawsuit forward" and "has performed numerous tasks in association with [the] litigation"); *Van Vranken, supra* at 300 (approving an award of $50,000 for the named plaintiff). Accordingly, the Service Awards sought by the Class Representatives is reasonable.

## X.     PLANTIFFS SATISFY THE FACTORS FOR PRELIMINARY APPROVAL OF THE SETTLEMENT

A class action settlement should be preliminarily approved if it (1) is the product of serious, informed non-collusive negotiations, (2) has no obvious deficiencies, (3) does not improperly grant preferential treatment to class representatives or segments of the class, and (4) falls within the range of possible approval. *See Williams v. Costco Wholesale Corp.*, Case No. 02cv2003, 2010 WL 761122 at *5 (S.D. Cal. March 4, 2010).

### A.     The Settlement Is The Product Of Serious, Informed, And Non-Collusive Negotiations.

The Settlement is the result of extensive and hard-fought negotiations.   Defendants have expressly denied and continue to deny any wrongdoing or legal liability arising out of the conduct alleged in the *Hinrichs* or *Grimm* action.

On September 2012, the parties attended a 13-hour mediation conducted by Michael

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF
STIPULATION AND AGREEMENT FOR SETTLEMENT OF
CLASS AND COLLECTIVE ACTIONS

3:12-CV-0120-GPC-NLS

17

Dickstein in San Francisco, to attempt to resolve all wage and hour claims of the class set forth in the *Hinrichs* action. While the mediation did not result in a settlement, the Parties continued their arms-length negotiations through Mr. Dickstein for several more months. Over the next several months, the Parties negotiated the terms of the Settlement.

During the negotiations, the Parties believed it was best to resolve all wage and hour federal claims as well. As a result the current *Grimm* action was eventually filed to assert FLSA claims and the Parties agreed to resolve all state and federal claims together in this action before this Court.

B.    The Settlement Has No Deficiencies.

The proposed $12,000,000.00 Settlement has no obvious deficiencies and is well within the range of possible approval. Defendants will pay the entire $12,000,000.00 into a common fund. There is an objective allocation formula to allocate the settlement payments to the Class without the need to file a claim form. If Plaintiffs' Counsel is awarded the Ninth Circuit benchmark of 25% of the common settlement fund as attorney's fees[8] and the Plaintiffs/Class Representatives are awarded their requested Enhancements, after administrative costs the amount of the common fund to be distributed to the Participating Settlement Class Members will be approximately  $8,830,000.00 (before deduction of employer and employee taxes).    There is no reversion of any unclaimed funds to Defendants.

C.  The Settlement Does Not Improperly Grant Preferential Treatment To Class Members.

The relief provided in the Settlement will benefit all Participating Settlement Class Members equally. The Settlement does not grant preferential treatment to any of the class representatives or segments of the settlement class in any way. All Participating Settlement Class Members will receive the same opportunity to participate in and receive payment. There is no claims process. Every Participating Settlement Class Member receives a payment. Moreover, the incentive or enhancement awards to the named Plaintiffs are not linked to anything other than the Court's approval, are giving a broad, general release (which the

---

[8] *See, e.g., Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1376 (9th Cir.1993).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF
STIPULATION AND AGREEMENT FOR SETTLEMENT OF
CLASS AND COLLECTIVE ACTIONS                                               3:12-CV-0120-GPC-NLS

18

Settlement Class Members are not giving) and are proportionate to the average gross recovery by each Settlement Class Member of approximately $10,500 and estimated net recovery of approximately $7,759 (before deduction for employer and employee taxes). *See Radcliffe v. Experian Information Solutions, Inc.*, ___F.3d___, 2013 WL 1715422 at *4 (9th Cir. April 22, 2013).

D. Estimate Of The Nature And Amount Of Potential Recovery.

The Parties have ascertained the average hourly rate for all escrow officers and escrow assistants in the Settlement Class and have surveyed 200 randomly-selected members of the Settlement Class for whom Defendants provided contact information in order to determine the nature and extent of the damages they incurred and to evaluate the merits of the case and potential for class certification.   Based upon the survey response which sought the number of uncompensated overtime hours allegedly worked and meal periods allegedly missed, factoring in the issue of whether Defendants had, or should have had knowledge of, whether these escrow officers and assistants had worked such overtime hours and missed such meal periods, and the controlling legal standards, the $12,000,000.00 settlement is fair and reasonable and pays each class member a significant amount.   Plaintiffs' Counsel is also conducting confirmatory discovery by again surveying the class sending Settlement Class Members a questionnaire with an accompanying letter (Settlement, Ex. 5)

The endorsement of qualified and well-informed counsel of the settlement as fair is entitled to significant weight. *In re M.L. Stern Overtime Litigation*, 2009 WL 995864 at *4; *Dunk v. Ford Motor Co.*, (1996) 48 Cal.App.4[th] 1794, 1802.  Plaintiffs' Counsel has extensive experience in representing escrow officers and assistants in wage and hour class actions.  It is the opinion of Plaintiffs' Counsel that the Settlement constitutes a fair, adequate and reasonable compromise of the claims asserted in the litigation.  Wagner Dec, at p. 17:23-18:3.

Plaintiffs' Counsel  has filed and prosecuted 7 similar wage and hour class action cases on behalf of escrow officers and have settled 5 of those.  Wagner Dec.at p. 18:4-21. Plaintiffs' Counsel has litigated the following class action cases on behalf of escrow officers:

| Case Name/Case Number | Case Status | Amount of Settlement | Escrow Officer Escrow Assistant |
|---|---|---|---|
| *Dawnette Brewer v. First American Title* Case  No.:    30-2007-00035365-CU- | Settled | $15,100.00 | |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF STIPULATION AND AGREEMENT FOR SETTLEMENT OF CLASS AND COLLECTIVE ACTIONS

3:12-CV-0120-GPC-NLS

19

| OE-CAC | | | |
|---|---|---|---|
| *Lisa English v. Financial Title*<br>Case No.: 05 CECG 01766 | Settled | $14,500.00<br>(Claims made) | Escrow Officers<br>only |
| *Vitoria Nazeri v. Placer Title*<br>Case No.: RG 08403011 | Settled | $4,250,000.00 | Escrow Officers and<br>Assistants |
| *Stevette Gambril v. Stewart Title*<br>Case No.: 07 CECG 01735 | Settled | $9,800,000.00 | Escrow Officers and<br>Assistants |
| *James Burda v. Fidelity National*<br>Case No.: 8:11-cv-00247 JVSMLG | Pending | N/A | Escrow        Officers<br>only |
| *Carolyn Cortina v.*<br>*North American Title*<br>Case No.: 07 CECG 01169 | Pending<br>On appellate review | N/A | Escrow        Officers<br>only |
| *Chris Chaffin v. Lawyers Title*<br>Case No.: BC 381693 | Settled | $9,570,000.00 | Escrow        Officers<br>only |

Plaintiffs' Counsel has been both successful and unsuccessful in achieving class certification of escrow officer claims in these cases. Among other things, in this case Defendants maintain that they have complied with all federal and state wage and hour laws including paying all overtime due and making available meal breaks in accordance with *Brinker Restaurant Corp v. Superior Court*, 53 Cal.4[th] 1004, 1038 (Cal. 2012). Accordingly, liability and class certification would be hotly contested.

Certainly the Parties will dispute the meaning and effect of *Brinker* and other relevant law. Defendants would vigorously oppose any motion for class certification. In addition to the normal risks parties would face in certifying and trying the case, the class would take the risk that Defendants would produce evidence that would support the payment of overtime hours and the absence of missed meal breaks that are different from Plaintiffs' positions. Plaintiffs have conducted sufficient investigation, both formal and informal, to make an informed decision about this Settlement. Plaintiffs' Counsel is highly experienced and competent in litigating wage and hour class claims of escrow officers. As such Plaintiffs' Counsel has unique insight as to the potential pitfalls of continuing to litigate this action.

As reflected in the accompanying Settlement, it has resulted in the creation of a settlement amount of $12,000,000.00 of which the Net Settlement Fund of approximately $8,830,000.00 (before deduction of employer and employee taxes but after all other expenses) is allocated to distribution to Participating Settlement Class Members on a non-claims made cash basis. The Settlement will compensate Class Members for the alleged unpaid wages, including overtime wages, resulting from their alleged off-the-clock work, and from the alleged meal and rest break violations. Based on the estimate of workweeks through September 30, 2012 as

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT          3:12-CV-0120-GPC-NLS
OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF
STIPULATION AND AGREEMENT FOR SETTLEMENT OF
CLASS AND COLLECTIVE ACTIONS

20

stated in the Settlement Agreement, it is estimated that Settlement Class Members will receive approximately $89.03 and $56.48 per workweek for escrow officers and escrow assistants, respectively (before upward adjustments for redistribution of funds that would have been paid to opt-outs and downward adjustments due to the increased number of workweeks through the date of the entry of the preliminary approval order of the Settlement). The Settlement also compensates the individual named Plaintiffs for their claims and provides them with a reasonable additional enhancement, for taking the risk, time, effort, responsibility and expenses they incurred by acting as class representatives.

## XI.  THE CLASS NOTICE MEETS ALL REQUIREMENTS

Under F.R.C.P. 23(c)(2)(B), the class notice must state:

> (i)The nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The Class Notice described above contains each of these requirements in a simple question-and-answer format. Accordingly, the Court should approve the form of notice.

As to the method of service of notice, sending by first class mail, after the Settlement Class Administrator updates the notice satisfies the due process requirements for sending notice. *See Williams*, 2010 WL 761122 at *7.

## XII.  PROPOSED SCHEDULE FOR NOTICE, OBJECTIONS, OPT-OUTS

A proposed schedule is attached as Exhibit "A" to this Memorandum.

## XIII.  CONCLUSION

The proposed Settlement is fair, adequate, and reasonable, and in the best interests of the Settlement Class. Under the applicable class action and collective action criteria and guidelines, Plaintiffs submit this Court should enter the Order of Preliminary Approval attached as Exhibit 4 to the Settlement that provides, among

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF
STIPULATION AND AGREEMENT FOR SETTLEMENT OF
CLASS AND COLLECTIVE ACTIONS

3:12-CV-0120-GPC-NLS

21

other things, 1) all the terms of the proposed Settlement are preliminarily approved; 2) the Settlement Class should he conditionally certified as a class and collective action for purposes of settlement only; 3) the Law Offices of Wagner & Jones LLP should be conditionally appointed Class and Collective Counsel for purposes of settlement only; 4) the Court should approve the Notice of Class Action Settlement to be sent to the Class (attached as Exhibit "1" to the Settlement Agreement); and  5) a date for the Final Fairness Hearing  should be scheduled.

Respectfully submitted,

DATED:  June 4, 2013

LAW OFFICES OF
WAGNER & JONES LLP


__/s/_____
Nicholas J.P. Wagner
Attorney for Plaintiffs

Memorandum of P&As 05 31 13

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF
STIPULATION AND AGREEMENT FOR SETTLEMENT OF
CLASS AND COLLECTIVE ACTIONS

3:12-CV-0120-GPC-NLS

22

Exhibit "A"

**PROPOSED SCHEDULE[1]**

1. **Mailing of Class Notice Packet**
   (Preliminary Approval Order,
   ¶ 11(a))

   August 7, 2013 (40 days after entry of Preliminary
   Approval Order)

2. **Deadline for Opt-Outs.**
   (Preliminary Approval Order,
   ¶ 14(a))

   September 23, 2013 (45 days after mailing Class Notice)

3. **Deadline for Objections to**
   **Settlement or Workweeks**
   (Preliminary Approval Order,
   ¶ 15(a))

   September 23, 2013 (45 days after mailing Class Notice)

4. **Deadline for Filing Notice**
   **of Personal Appearance**
   **at Final Fairness Hearing**
   (Preliminary Approval Order,
   ¶ 15(b))

   September 23, 2013 (45 days after mailing Class Notice)

5. **Plaintiffs' and/or Defendants'**
   **Responses to Objections**
   (Preliminary Approval Order,
   ¶ 10)

   October 23, 2013 (30 days after filing Objections)

6. **Final Fairness Hearing**
   (Preliminary Approval Order,
   ¶ 10)

   To be scheduled in accordance
   with the Court's calendar but
   no earlier than November 5, 2013
   ( 90 days after mailing of Class Notice)

EXHIBIT A

---

[1] The Proposed Schedule assumes the Court enters the Order of Preliminary Approval (Exhibit 4 to the Settlement) ("Preliminary Approval Order") on June 28, 2013.

## PROOF OF SERVICE

1 | STATE OF CALIFORNIA, COUNTY OF FRESNO

2 |        I am employed in the County of Fresno; I am over the age of 18 years and not a party to
the within above-entitled case.

3 |

4 |        On June ___, 2013, I served the within document described as **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF STIPULATION AND AGREEMENT FOR SETTLEMENT OF CLASS AND COLLECTIVE ACTIONS** on the interested parties in this

5 | action by placing a true copy thereof enclosed in sealed envelopes addressed as follows:

6 | Nick A. Boodrookas
Robert W. Biederman

7 | Michelle Akerman
STEYER LOWENTHAL BOODROOKAS

8 |   ALVAREZ & SMITH LLP
One California Street, Third Floor

9 | San Francisco, CA  94111

10 | Email:  rbiederman@steyerlaw.com
Telephone: 415/421-3400

11 | Facsimile: 415/421-2234

12 |

13 | [ ]     **(BY MAIL)** placing the envelopes for collection and mailing on the date and at my
address shown above following our ordinary business practices.  I am completely familiar

14 |        with Wagner & Jones' practice of collection and processing correspondence for mailing
pursuant to which the envelopes would be deposited with the United States Postal Service

15 |        the same day in the ordinary course of business.

16 | [ ]     **(BY OVERNIGHT MAIL SERVICE)** by placing the envelope for collection following
our ordinary business practices for collection and processing correspondence for mailing

17 |        by express or overnight mail.

18 | [ ]     **(BY FACSIMILE)** In addition to service by mail as set forth above, the person(s) by
whose name an asterisk is affixed, was also forwarded a copy of said documents by

19 |        facsimile.

20 | [ ]     **(BY PERSONAL SERVICE)** I caused such envelope to be delivered by hand to the
offices of the addressee.

21 | [X ]    **(BY ELECTRONIC ACCESS)**  pursuant to the Electronic Filing General Order, I
hereby certify that the above documents were uploaded to the ECF website and will be

22 |        posted on the Website by the close of the next business day at the webmaster will give e-
mail notification to all parties.

23 |

24 |        I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct. Executed on June ___, 2013, at Fresno, California.

25 |

26 |

27 |

28 |